IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO.: 5:16-CV-71

| | |
|---|---|
| **TEMESHA CALDWELL, ALYSSA GOSS, JESSE HUFFMAN, SHAVOUGHNTE HUNT,** and **LATRENDA PHILLIPS,** <br><br> *Plaintiffs,* <br><br> v. <br><br> **CITY OF HICKORY PUBLIC HOUSING AUTHORITY, UNIFOUR CAPITAL VENTURES, INC.,** and **MONTELE BURTON,** <br><br> *Defendants.* | **COMPLAINT AND JURY REQUEST** |

NOW COME the Plaintiffs, complaining of the Defendants and allege the following to be true:

## INTRODUCTION

1 This action concerns sexual harassment, coercion, retaliation, and intimidation by employees and managers of City of Hickory Public Housing Authority ("HHA"). Each Plaintiff was a resident of HHA during the relevant time and was a victim of this sexual harassment, coercion, retaliation, and/or intimidation by HHA, who did nothing to protect the Plaintiffs from its employees and managers. To make matters worse, HHA did not properly vet its primary offender—Montele Burton ("Burton"), a HHA manager—when proper vetting would have

-1-

revealed to HHA that Burton had previously engaged in similar conduct and was likely to do so again.

    **2**    Each paragraph of this Complaint incorporates all others.

## PARTIES, JURISDICTION, AND VENUE

    **3**    Each Plaintiff is or was a resident of Hickory, North Carolina, and none are minors or incompetents.

    **4**    HHA is a municipal corporation organized and existing under the laws of the State of North Carolina with a principal office in Hickory, North Carolina.

    **5**    Unifour Capital Ventures, Inc. ("UCV") is a domestic corporation organized and existing under the laws of the State of North Carolina with a principal office in Hickory, North Carolina.

    **6**    At all times relevant to this action, Burton was an employee of HHA living in Hickory, North Carolina. His current residence is believed to be in Charlotte, North Carolina, and he is neither an infant nor an incompetent.

    **7**    This Court has subject-matter jurisdiction over this action pursuant to any/all of the following:

        **7.1**    28 U.S.C. § 1331, as the action arises out of the federal Fair Housing Act, codified as 42 U.S.C. § 3601 *et seq.*; and

        **7.2**    With regard to Plaintiffs' state law claims, 28 U.S.C. § 1367(a), as the state law claims form part of the same case or controversy as those giving rise to original jurisdiction.

8   This Court has personal jurisdiction over all parties to this matter pursuant to any/all of the following:

    8.1   Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, which requires the federal district courts to use the rules for personal jurisdiction of the state where the district court is located;

    8.2   N.C. Gen. Stat. § 1-75.4(1)(c) and (d) as HHA was a domestic corporation and was engaged in substantial business activity within this state at the time service of process was made upon it; and/or

    8.3   N.C. Gen. Stat. § 1-75.4(3), as this action arises from a local act or omission causing injury to Plaintiffs' person or property.

9   Venue is proper in this Court pursuant to any/all of the following:

    9.1   28 U.S.C. § 1391(b)(1), as Defendant is a resident of the Western District of North Carolina; and/or

    9.2   28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred in the Western District of North Carolina.

# FACTS

**I.   HHA and its relationship with UCV.**

10   UCV is a nonprofit domestic corporation purportedly operating for charitable or educational purposes under Section 501(c)(3) of the Internal Revenue Code of 1986, formed pursuant to the North Carolina Nonprofit Corporation Act.

-3-

Case 5:16-cv-00071-RLV-DCK   Document 1   Filed 05/03/16   Page 3 of 13

11	UCV is a mere instrumentality of HHA, to the extent that a September 2015 revision to its Articles of Incorporation states that UCV "is and shall continue to be an instrumentality of the City of Hickory Public Housing Authority."

12	UCV and HHA, per the bylaws of UCV, maintain the same board of directors at all times.

13	UCV's logo features alongside HHA's on HHA's website (http://www.hickoryhousing.org[1]) at the top of the page, in the following banner:



14	Upon information and belief, HHA and UCV fail to observe corporate formalities necessary to distinguish between the two entities.

II.	**HHA and its relationship with/hiring of Montele Burton.**

15	HHA is a public housing authority that owns public housing units that it rents to low-income tenants whose poverty renders them eligible for assistance.

16	HHA hired Burton on December 30, 2013 in the position of Office Support Technician.

---

[1] Accessed with screenshot taken on May 2, 2016.

17      After changing his position multiple times, HHA promoted Burton to the managerial position of Property Operations Manager on November 1, 2014.

18      Burton's duties as Property Operations Manager were to oversee the public housing program; manage and maintain all HHA public housing units; and to manage tenant re-certifications, leasing, and occupancy.

19      Burton had previously worked for various housing authorities, including those in High Point, Lynchburg, Charlotte, Conway, and Monroe.

20      Upon information and belief, at least two prior housing authorities—Charlotte and Monroe—terminated Burton for sexual harassment of tenants or similar allegations and placed him on a "Do Not Hire" list, which would trigger a disclosure of his reason for termination in response to inquiries from prospective employers, including other housing authorities.

21      Upon information and belief, failed to contact Burton's prior housing authorities before hiring him, and continued that failure through the time it promoted Burton to Property Operations Manager, a position which gave him enormous power over the tenants living in HHA's public housing units.

22      Upon information and belief, had HHA contacted Burton's prior housing authorities, including, but not limited to, Charlotte and Monroe, it would have learned of Burton's tendency to sexually harass residents under his authority.

23      Over the course of Burton's tenure, HHA received complaints from multiple residents regarding Burton's sexual advances, but did nothing to investigate those complaints or discourage Burton's behavior prior to February 6, 2015.

24      On February 6, 2015, in response to Temesha Caldwell approaching the board directly—bypassing Alanda Richardson, the Housing Director—HHA finally suspended Burton pending investigation of personnel policy violations—namely, his sexual harassment of female tenants.

25      Burton resigned from his position with HHA on February 13, 2015.

### III.    Plaintiffs' individual experiences with sexual harassment at HHA.

26      Plaintiff Temesha Caldwell ("Caldwell"), age 38, an African-American woman, rented an apartment from HHA in October, 2014 which she occupied with her three children, ages 16 and 18 and 19. During Caldwell's tenancy, Burton sexually harassed her. He conditioned Caldwell's housing benefits on her performance of sexual favors. He stalked her, repeatedly harassed her in her house, and at times commented on the whereabouts of her children. He threatened to evict and physically harm her for seeing other men in her home. He threatened her with eviction and bodily harm and physically assaulted her when she would not submit to his sexual demands. On or around February 2015, about a week after Caldwell's report to the HHA board, when Burton continued to stalk Caldwell after his suspension, Caldwell requested necessary assistance from HHA to stop Burton's behavior and HHA refused to assist her. Richardson mocked Caldwell's issues with Burton the day after the Board meeting. Caldwell has suffered pecuniary loss and emotional distress as a result of Defendants' unlawful conduct.

27      Plaintiff Alyssa Goss ("Goss"), age 23, an African-American woman, rented an apartment from HHA in November, 2013 which she occupied with her four minor children. During Goss's tenancy, Burton sexually harassed her. He stalked her by going through her panty drawers and dirty clothes, coming to her house after hours, watching her house from the parking

lot, and demanding frequent meetings away from the HHA main office to discuss her housing, wherein he would manufacture claims of wrongdoing by Goss. Goss made several reports of Burton's conduct to HHA, which directed her to address her concerns with Burton himself. After these reports, Goss failed an inspection done by Burton himself and Burton began demanding more frequent private meetings. The failed inspection had the consequence that HHA would more frequently inspect Goss's house. Goss gave Burton requests for a reasonable accommodation for her disabled child—the requests including medical information—and Burton failed to file those requests appropriately. Goss has suffered pecuniary loss and emotional distress as a result of Defendants' unlawful conduct.

28  Plaintiff Shavoughnte Hunt ("Hunt"), age 24, an African-American woman, rented an apartment from HHA in 2011, which she occupied with her children. During Hunt's tenancy, Burton sexually harassed her. Burton told Hunt that he could "help her work something out" if she fell behind on rent, which she took to have a sexual connotation. On another occasion, Burton brushed up against her in a way that she interpreted as being sexual. Burton got upset when Hunt had male visitors. Hunt saw Burton outside her apartment between approximately 2 AM and 6 AM on multiple occasions. Hunt reported to Richardson that Burton had been outside her apartment, and Richardson forwarded that report to Burton. Shortly after that report, Burton escalated his harassing behavior, overcharging her for repairs and refusing to answer questions about a charge on her statement or accept her rent payment. Hunt moved out of HHA housing on or around October 17, 2014 because Burton stated he was evicting her and she needed to be gone in ten days. Hunt has suffered pecuniary injury and emotional distress as a result of Defendants' unlawful conduct.

-7-

Case 5:16-cv-00071-RLV-DCK   Document 1   Filed 05/03/16   Page 7 of 13

29     Plaintiff Jesse Huffman ("Huffman"), age 26, a Caucasian woman, rented an apartment from HHA in 2013, which she occupied with her two children. During Huffman's tenancy, Burton sexually harassed her. Burton, while fondling his own penis, told Huffman that she could perform sexual favors in lieu of rent. She refused. The next day, Huffman reported Burton's behavior to HHA, which sent her away stating it could not believe Huffman unless she brought proof. Later, Burton touched Huffman below her waist in a sexual manner. She reported this to HHA the next day, which sent her away stating that it could not believe Huffman unless she brought proof. Still later, Huffman found Burton watching her house. She reported this to HHA, which sent her away again stating that it could not believe Huffman unless she brought proof. Huffman has suffered pecuniary injury and emotional distress because of Defendants' unlawful conduct.

30     Plaintiff Latrenda Phillips ("Phillips"), age 45, an African-American woman, rented an apartment from HHA in 2010, which she occupied with her ten-year old son. During Phillips's tenancy, Burton sexually harassed her. After a meeting with public housing residents in 2014, Burton began calling her several times daily, including after hours. Burton demanded sexual favors from Phillips in lieu of rent. When Phillips attempted to discontinue her extortionate relationship with Burton, Burton began calling and visiting her incessantly, begging and demanding that she continue giving him sexual favors, and threatening her housing. When Phillips received a settlement related to an auto accident, Burton demanded that she give him a significant portion of the money to shield her from income-related repercussions to her housing. Burton made statements saying that he had successfully evicted a female tenant and her family because she "spoke back to him." Burton told Phillips that when tenants reported him to

Richardson, Richardson told him about the reports and he could retaliate against the complainant.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 3604—Quid Pro Quo
*Plaintiffs Caldwell, Huffman, and Phillips*
*All Defendants*

31  The above-named Plaintiffs were subjected to demands for sexual favors.

32  The above-named Plaintiffs experienced that demand because of their sex.

33  Housing benefits were explicitly or implicitly conditioned on performance of the sexual favors.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 3604—Hostile Housing Environment
*All Plaintiffs*
*All Defendants*

34  The above-named Plaintiffs were subjected to verbal or physical conduct of a sexual nature.

35  The above-named Plaintiffs was subjected to this conduct because of their sex.

36  This conduct was unwelcome.

37  This conduct was sufficiently severe or pervasive to alter the use and enjoyment of the home and to create an abusive living environment.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 3617—Fair Housing Interference
*All Plaintiffs*
*All Defendants*

38   The above-named Plaintiffs engaged in activity protected under the Fair Housing Act.

39   The Defendants subjected the above-named Plaintiffs to adverse actions in the form of coercion, intimidation, threats, or interference.

40   There was a causal connection between this adverse action and the protected activity.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 3604(c)—Discriminatory Statements
*All Plaintiffs*
*All Defendants*

41   Defendants made, printed, and/or published statements with respect to the rental of a dwelling indicating preference, limitation, and/or discrimination based on sex or an intention to make preference, limitation, and/or discrimination based on sex.

## FIFTH CAUSE OF ACTION
### Negligent Hiring, Retention, and Supervision
*All Plaintiffs*
*Defendant HHA*

42   Burton was an employee of HHA.

43   Burton committed the tortious acts of assault, battery, and violations of the federal and state fair housing acts.

44   Burton was an incompetent, unfit employee.

45      HHA had actual or constructive notice of Burton's incompetency and unfitness.

46      Plaintiffs suffered injury as the result of Burton's incompetency and unfitness.

## SIXTH CAUSE OF ACTION
### Pierce the Corporate Veil
*Between Defendants HHA and UCV*

47      UCV is a mere instrumentality of HHA.

48      Upon information and belief, HHA and UCV fail to follow necessary corporate formalities to establish a corporate veil between the two entities.

## PRAYER FOR PUNITIVE DAMAGES

49      As to Plaintiffs' claims under federal law, Defendants are liable for compensatory damages and at least one of the following factors was present and related to the conduct for which they are liable:

    49.1    Malice;

    49.2    An evil motive; and/or

    49.3    Callous indifference to a federally protected right.

50      Officers, directors, and/or managers of HHA participated in and/or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

## JURY TRIAL REQUESTED

51      Plaintiffs request a trial by jury on all issues so triable.

WHEREFORE, Plaintiffs respectfully request that the Court:

     **1**     Find for the Plaintiffs and against the Defendants on each cause of action alleged herein;

     **2**     Award damages, including punitive damages, to Plaintiffs in an amount to be proved at trial;

     **3**     Issue declaratory relief stating that each Defendant has violated the laws associated with the causes of action raised herein;

     **4**     Enjoin all unlawful practices alleged in this Complaint and impose affirmative injunctive relief requiring Defendants, their contractors, agents, employees, assignees, and any other person acting in concert or participating with them to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants free from conduct in violation of the Fair Housing Act;

     **5**     Tax the costs of this action against Defendants and award Plaintiffs with reasonable attorney's fees; and

     **6**     Grant all such other and further relief as the Court deems just and proper.

*Respectfully submitted on this, the 3rd day of May, 2016.*

/S/ CRAIG HENSEL
*Attorney for Plaintiffs*
NC State Bar No. 40852
HENSEL LAW, PLLC
PO Box 39270
Greensboro, NC 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
craig.hensel@hensellaw.com

/S/ DIANE E. CITRINO
**Pro Hac Vice Pending**
*Attorney for Plaintiffs*
Ohio State Bar No. 0062832
GIFFEN & KAMINSKI LLC
1300 E. Ninth St., Ste. 1600
Cleveland, OH 44114
Phone: (216) 621-5161
Fax: (216) 621-2399
dcitrino@thinkgk.com

# CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2016, I electronically filed the foregoing Complaint and Jury Request with the Clerk of Court using the CM/ECF system, and upon return of the executed Summonses, will serve the following by US Mail, Certified, Return Receipt:

City of Hickory Public Housing Authority
841 South Center Street
PO Box 2927
Hickory, NC 28603

Unifour Capital Ventures
c/o T. Dean Amos
14 Third Ave. NE
Hickory, NC 28601

and by hand delivery to:

Montele Burton
9200 SHADOWOOD LN
CHARLOTTE, NC 28273-5656

**AND/OR**

Montele Burton
3001 ALICE FLAGG LN #107
INDIAN TRAIL, NC 28079-8414

/s/ **CRAIG HENSEL**
*Attorney for Plaintiffs*
NC State Bar No. 40852
HENSEL LAW, PLLC
PO Box 39270
Greensboro, NC 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
craig.hensel@hensellaw.com